IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **MODI DIAWARA** | * | **CIVIL ACTION NO. 06-1249** |
| **VERSUS** | * | **JUDGE JAMES** |
| **ALBERTO GONZALEZ, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241 (Doc. #1) filed by *pro se* Petitioner Modi Diawara ("Diawara") on July 21, 2006.  The Government has responded to Diawara's petition (Docs. # 9,12).  For reasons stated below, it is recommended that Diawara's petition be **DISMISSED without prejudice.**

### BACKGROUND

Diawara is a native and citizen of Mali who entered the United States through New York, NY, as a visitor on February 4, 1999.  Diawara remained in the United States beyond the authorized time period and, on March 24, 2005, he was arrested at his workplace based on information that bomb-making instructions had been found at the workstation that he commonly used.  He fled at the time of his arrest, but was subsequently apprehended by ICE agents.  ICE initially determined that Diawara should be detained with no bond due to the circumstances involving his arrest.  Diawara was issued a Notice to Appear for removal proceedings on March 24, 2005.  *See* Declaration of Terry C. Bird, Attachment to Gov. Supplemental Brief, Ex. A.

On April 1, 2005, Diawara filed a written motion for a bond hearing with the immigration court in Atlanta.  Diawara and his counsel appeared at the Immigration Court in Atlanta on April 5, 2005; however, counsel requested a continuance to allow him time to prepare the case, and the hearing was reset to April 26, 2005.  On such date, an Immigration Judge in Atlanta commenced

a hearing regarding Diawara's custody and bond. After discussing the issues, the Immigration Judge continued the case until May 3, 2005, in order to obtain further information on the bond issue. On May 3, 2005, the Immigration Court, for its own reasons, rescheduled the bond/custody hearing to May 10, 2005. A bond hearing was subsequently held on this date, and the Immigration Judge determined that Diawara should be held in custody without bond.

On or about June 8, 2005, Diawara filed an appeal of the Immigration Judge's bond decision. However, the appeal incorrectly stated that it was on the "merits" decision, which indicates that the Immigration Judge has decided the merits of the central issue of whether the alien is subject to removal. On June 9, 2005, the Board of Immigration Appeals ("BIA") issued a filing receipt for Diawara's appeal which stated the type of appeal as a "case appeal," meaning an appeal of the Immigration Judge's decision on the merits of removal. While Diawara remained in custody pending his bond appeal, the BIA reviewed the court's record of the proceeding and, on November 3, 2005, issued an order which noted that there was no recording ("tapes") of the hearing and no oral decision from the Immigration Judge. Therefore, the BIA ordered the record returned to the Immigration Court for further action.

On January 13, 2006, Diawara filed a motion to reconsider the conditions of remand and for a change of venue to Oakdale, Louisiana. Numbered paragraph 1 of such motion states "Respondent was ordered removed by the Immigration Judge in Atlanta, Georgia on May 10, 2005." *See* Bird Declaration, Attachment to Gov. Supplemental Brief, Ex. H. On May 25, 2006, the BIA issued a written decision and order in Diawara's case noting that no Notice to Appear had been filed and that the only action pending with the BIA or the Immigration Court was a bond request.

On July 21, 2006, Diawara filed a Petition for Writ of Habeas Corpus in this Court

alleging that he had been detained by the Department of Homeland Security for approximately fourteen months without having the opportunity for a hearing to answer the charges of removability lodged against him and asking the undersigned to issue an order to BICE requiring that he be released from custody immediately. On November 13, 2006, the Government filed an answer stating that a Notice to Appear was filed on October 23, 2006, and that Diawara was scheduled for a removal hearing on November 3, 2006. According to the Government, no attorney appeared for Diawara at the hearing, so it was reset for November 21, 2006. Thus, at that time, no final order of removal had yet been entered.

On February 12, 2007, the undersigned ordered the parties to submit supplemental briefing addressing the following issues: (1) why a Notice to Appear for Diawara was not issued until October 23, 2006, approximately 19 months after he was arrested; (2) whether Diawara is currently being detained within this Court's territorial jurisdiction; (3) whether any criminal charges have been brought against Diawara; (4) the purpose and outcome of the hearing scheduled in Diawara's case for February 20, 2007; (5) the date and purpose of any other hearing or hearings scheduled in Diawara's case; (6) whether Diawara has requested or is entitled to a bond hearing at this time and, if so, why Diawara's current claims should not first be addressed at such hearing; and (4) any additional authority supporting or refuting the contention that this Court should order Diawara's release in light of the fact that removal proceedings are now underway.

In response, the Government submitted the Declaration of Terry C. Bird ("Bird"), Chief Counsel for ICE's Atlanta office. According to Bird, on or about October 20, 2006, he was asked by a deportation officer in Atlanta why Diawara had not yet been placed in removal proceedings. After retrieving Diawara's A-file, Bird consulted with the ICE attorneys who handled Diawara's

case about why he was not in removal proceedings. According to Bird, the attorneys were surprised by the question, as they apparently thought that Diawara's Notice to Appear had already been filed with the immigration court. After making sure that the Notice to Appear was in fact filed, Bird discovered that what he terms a "unique series of events" resulted in the delay in the filing of the Notice to Appear.

Bird states that the office procedure is for each Notice to Appear to be reviewed and filed with the court promptly when the A-file is received in office mail. In this case, however, Diawara's attorney requested a bond hearing before the A-file had been sent to counsel in the main office. The A-file was obtained by a clerk from another working unit for the bond hearing and placed directly in the hands of the attorney going to court. After the initial bond hearing, the attorney did not realize that the Notice to Appear had not been reviewed and filed. Cases in the Atlanta office are handled by the attorney assigned to a particular judge each calendar day; therefore, the assignments rotate among attorneys. In Diawara's case, subsequent attorneys who represented the Government at continued dates did not realize that the Notice to Appear had not been filed with the court as the court does not require the Notice to Appear for a bond hearing, only a merits hearing.

Bird goes on to state that, after the May 10, 2005, bond decision was made by the Immigration Judge, the matter was further confused by the fact that Diawara's attorney filed an appeal form which stated that the appeal was on the merits of the case rather than the bond decision  Similarly, the BIA's filing receipt states "Type of Appeal: Case Appeal," which indicates a hearing the merits, not a bond appeal. Bird Declaration, Ex. E. Thus, any ICE attorney looking at the file and reading the appeal notice or receipt would assume the Notice to Appear had been filed because of the indication that the Immigration Judge had made a decision

on the merits. Furthermore, the BIA's November 3, 2005, decision also indicated that the Immigration Judge had made a decision on the merits and that the delay was due to missing audiotapes of the hearing. According to Bird, there is no indication that the May 25, 2006, BIA order stating that no Notice to Appear for Diawara had been filed was received in the Atlanta office. Bird contends that the decision may have been sent to Oakdale, Louisiana, as Diawara's attorney resides there. On or about June 1, 2006, Diawara filed a motion to reconsider with the EOIR in Oakdale, but jurisdiction over such was in Atlanta, Georgia . The motion was subsequently filed in Atlanta but, because the motion again only asked for a bond redetermination, ICE attorneys missed the fact that no Notice to Appear had been filed with the immigration court.

     Bird states that, as soon as the situation was brought to his attention, the Notice to Appear for Diawara was filed and an expedited hearing was scheduled for November 9, 2006. At such hearing, no counsel appeared for Diawara, although Diawara contended that he had counsel at that time. Diawara requested bond at the hearing, but the Immigration Judge advised Diawara that he had no pending bond request and advised him to file another one. The Judge reset the case to November 21, 2006, so that Diawara could have his counsel present. After a continuance at Diawara's request, a Master Calendar hearing was held on December 5, 2006, at which Diawara was present with counsel. After the removal charge was sustained, Diawara informed the court that he was seeking withholding of deportation and relief under the United Nations Convention Against Torture. Diawara again asked the court to release him on bond pursuant to his November 15, 2006, written request for bond. The Government opposed bond, citing the ICE agent's recommendation in the investigative report (form I-231), which was based Diawara's alleged interest in bomb making. The Immigration Judge denied bond and set the case for

5

hearing on the merits of any relief from deportation for February 20, 2007. On February 17, 2007, Diawara's attorney filed a motion to withdraw the request for relief from deportation and seeking a final order of removal.

According to Bird, Diawara's attorney did not appear at the hearing on February 20, 2007. However, Diawara was present and, after it was revealed that he had not filed an application for asylum or any other relief, the Immigration Judge ordered Diawara removed to Mali. Diawara has 30 days from the date of the removal order to file an appeal. If no appeal is filed, the Government has stated that it will move to get a travel document and execute the order of removal.

In his petition, Diawara seeks release from USICE custody based on the fact that he has was detained for approximately 18 months without being placed in removal proceedings. In response, the Government argues that, because Diawara has now been ordered removed to Mali, his claim is now moot or, in the alternative, he has failed to show that there is no likelihood of his removal in the reasonably foreseeable future under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## LAW AND ANALYSIS

In reviewing a petition for writ of habeas corpus by a detained alien who is subject to a final order of removal, a federal district court, pursuant to the authority of 28 U.S.C. §2241(c)(3), is to gauge whether a particular set of circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal. In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6), the post-removal-order detention statute, implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal. *Id.* at 688-98. The Court, however, noted that the statute does not permit indefinite detention; the

"reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id.* at 697-702. After that six month period expires, and the immigrant demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish sufficient rebuttal evidence. *Id.*

In this case, although the delay of the inception of Diawara's removal proceedings is regrettable, the record shows that it was not intentional, and that the confusion leading to the delay was caused, as least in part, by Diawara's own attorney. The delays since the removal proceedings have commenced have also been caused in large part by the actions of the petitioner or his counsel. In addition, the facts leading to Diawara's arrest, along with his flight to avoid arrest, make detention pending removal proceedings and pending removal reasonable in this case. Finally, nothing in the record indicates that there is no significant likelihood of Diawara's removal in the reasonably foreseeable future. An Immigration Judge has ordered Diawara removed and the Government has stated that, once Diawara's 30-day appeal period has run and a final order of removal has been issued, ICE intends to obtain a travel document as quickly as possible in order to effectuate his removal. Furthermore, there is no indication that Diawara's home county of Mali will not issue a travel document for him. Therefore, it appears that there is a significant likelihood of Diawara's removal in the reasonably foreseeable future, and it is recommended that his petition be **DISMISSED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of March, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE